## NEWTON et al. v. GENERAL DRY BATTERIES, Inc.
### Civil Action No. 1432.

District Court, D. Maryland.

Feb. 9, 1943.

Alvin L. Klupt, of Baltimore, Md., and J. Mills Newton, of Danville, Va., for plaintiffs.

Edwin F. Samuels, of Baltimore, Md., and William E. Chilton, of Cleveland, Ohio, for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a patent infringement suit involving three patents for fluid mixing apparatus for commingling gas and water and more especially for the impregnation of water with carbonic acid gas. The type of apparatus involved in all of the patents is identified with that used in connection with soda water dispensing systems.

The three patents were all issued to one of the plaintiffs, Harry Haven, and are held jointly by him and the other two plaintiffs, namely, patent No. 1,845,660 issued February 16, 1932, upon application filed April 1, 1930; patent No. 1,845,661, bearing the same date of application and issuance, and patent No. 1,985,570 issued December 25, 1934, upon application filed November 11, 1932.

The first of these patents as above given embraces twelve claims, but only claims 2, 3 and 10 are in suit. The second patent embraces three claims, but only the first claim is in suit; and the third patent embraces ten claims, but only Nos. 9 and 10 are in suit; that is to say, we are concerned here with a total of only six claims in the three patents.

Patent No. 1,845,661 is a companion patent to patent No. 1,845,660 and is covered by a companion application of the same date, patent No. 1,845,661 including a mixing valve in combination with the same apparatus which is specifically claimed in patent No. 1,845,660. Thus, as respects these two patents, suffice it to quote claim 10 of patent No. 1,845,660 as typical of the three claims of this patent which are in suit; and claim 1 of patent No. 1,845,661. These two claims are as follows: "A mixer adapted for connection with a source of liquid, a valve casing having a gas chamber connected with the mixer and including diaphragm means and a carried valve operable in the gas chamber, means to press upon the diaphragm means and thus tend to resist flexure of the diaphragm means under fluid pressure, and a discharge conduit connected with the mixer, said conduit opening against the diaphragm and including means to retard the fluid flow in varying degrees depending upon the position of the diaphragm means." Claim 10 of Patent No. 1,845,660. "A fluid-mixing device comprising a normally closed reservoir having a communicating mixing chamber, means for introducing liquid into the chamber in the direction of the reservoir, and means for introducing a jet of gas into the chamber in the direction opposite to that of the liquid jet, thus to produce a mixture for storage in the reservoir." Claim No. 1 of Patent No. 1,845,661.

As respects the third patent, namely, Haven No. 1,985,570, its difference is alleged to lie in the provision made for a particular type of control valve acting automatically to let in additional pressure fluid from the source of supply, both to supply the mixing nozzle and to create a static pressure in the container. Of the two claims of this patent which are in suit, namely, claims 9 and 10, we quote claim 10 as being the more comprehensive: "A control valve comprising a valve carrier and a valve body, means by which the carrier and body are separably connected, said carrier having a bore and the body having a chamber, at least one outlet from the chamber for the egress of pressure fluid, means on the carrier enabling connection with a source of pressure fluid to supply the bore, a valve element, the inner end of the carrier having a seat for said element, a stem for said element and plural guide means for the stem, said means comprising a fluted guide on the stem and a spider in the bore, and resilient means fitten between the guide means tending to keep the valve element on said seat."

Unlike the situation in most patent suits, our task is greatly simplified in that the defendant relies primarily upon the defense of non-infringement and, in fact, grants the validity of all three of plaintiffs' patents, at least in so far as novelty is concerned if strict adherence be had to the language of the claims and specifications. In so far as utility of plaintiffs' device, if thus constructed, is concerned, while denied by defendant and indeed doubtful upon the very limited evidence as to utility which has been presented, we are, nevertheless, disposed to give to the plaintiffs the benefit of such doubt on the question of validity, and to treat all three patents as valid.

Defendant's device is covered by patent to Deibel No. 2,201,429, issued May 21, 1940, upon application of January 7, 1939. Thus, defendant is not asserting priority, but denies infringement on the ground that, under plaintiffs' patents, it is a combination of the gas and the water that actuates the diaphragm and not the water alone, whereas what actuates the diaphragm in defendant's device is the water pressure alone.

It is further claimed on behalf of the defendant that if the gas pressure in plaintiffs' device ever exceeds the incoming water pressure, plaintiffs' device will not work unless manually manipulated by means of the spigot, or faucet, attached to the intake gas line. Indeed Mr. Haven, the patentee, so admitted in the course of his testimony.

There are two other features of defendant's device which differentiate it from plaintiffs' device: (1) a hollow porous stone, preferably tubular in shape, set in the carbonator to diffuse the gas, which is absent in plaintiffs' device; and (2) introduction of the gas perpendicularly to the flow of the water, whereas in plaintiffs' device, the flow of the gas is head on against the flow of the water.

As to the first of these differences, it would appear to be a very minor one, and defendant so admits. However, the difference in the method of introducing the gas into the water is claimed by the defendant to be a very material, functional difference, amounting to a legal distinction. In this we concur, and therefore are compelled to find that for this reason alone, if for no other, defendant's device does not infringe.

We do not feel that there is any merit in plaintiffs' additional argument that even if patent No. 1,845,660 be held not to be infringed by defendant's device on the ground that patent No. 1,845,660 is a combination patent, patent No. 1,845,661 is, nevertheless, infringed since defendant's device, while not embracing the entire combination of patent No. 1,845,660, does embody the mixing valve of patent No. 1,845,661. Patent No. 1,845,661 is expressly stated to be an improvement on the mixing device disclosed in the fluid mixing apparatus covered by patent No. 1,845,660 "with which the instant device is intended to be used." But in any event, in defendant's device there is no jet of gas—certainly no jet of gas in a direction opposite to that of the flow of liquid—which is a very vital part of claim 1 of patent No. 1,845,661, which is its only claim in suit, and which we have heretofore quoted. In the specifications of this patent it is stated that "by driving the two jets or streams against each other in direct opposition to the directions of their paths a tremendous swirling action is set up in a very restricted space with the inevitable result of a thorough mixture of the constituents."

The testimony of Mr. L. I. Yeomans, consulting industrial engineer, and a witness for the defendant, was very convincing to the effect that the difference in the method of application of the gas to the water, and the result thereby produced, represent a very material distinction. It is conceded that a certain amount of gas in the course of the operation of defendant's device will run up into the water chamber, and to that extent the gas may be said to be meeting the water head on; but there is certainly no jet of gas as that phrase is used in plaintiffs' patent No. 1,845,661 thrown head on into the water. In other words, we conclude that the flows of gas and water in defendant's device must be taken as occurring essentially, if not completely, in perpendicular relation to each other, whereas there can be no doubt that what Haven was seeking to accomplish, what he described, and what he claimed was the feeding of the gas head on into the water.

A number of prior art patents have been introduced by the defendant, for the purpose of showing that defendant's device reads on certain of these patents, and that plaintiffs' patents read on certain

other ones. This appears to be correct. Plaintiffs' patents are similar, as defendant claims, to patents to Sanford No. 1,328,204 and 1,338,592; whereas defendant's device is similar to patents to Treanor No. 1,-840,859, and to Maas No. 1,630,575.

Sanford No. 1,338,592 while different from Haven No. 1,845,660 in the respect that the former has a differential valve and means to prevent return of the gas to the water supply system, the two are basicly alike in that in both the gas supply is controlled by the mixture. The same basic similarity exists between Sanford No. 1,328,204, and Haven No. 1,-845,661; and that Sanford patent bears a relation to the other Sanford patent similar to that which the last mentioned Haven patent bears to the other Haven patent in suit, namely, that of an improvement or sister patent. On the other hand, both the Treanor and Maas patents embody the same principle which is the primary factor in defendant's device, differentiating it from plaintiffs' device, namely, the water pressure, and not the mixed pressure of the water and gas, controls the gas supply for the carbonation.

For the reasons just stated, plaintiffs' bill of complaint must therefore be dismissed, for failure to prove any infringement by defendant of any of the six claims that are in suit under plaintiffs' three patents.

As respects costs, at the very close of this proceeding and not earlier, defendant's counsel sought to have plaintiffs put under a rule security for costs. This matter is governed by the following portion of local Court Rule No. 40: "Every plaintiff, non-resident of this District, shall, on motion to be made by any defendant *at or before the time when he is required to plead, or afterwards in the discretion of the court*, give security for costs in the sum of one hundred dollars, unless for cause shown the court shall by order require a greater amount." (Italics inserted.) *It will thus be seen that when* the point is made, as it has been in the present case, after issue has been joined, it rests within the sound discretion of the court as to whether a non-resident plaintiff shall be required to give security for costs. Under the present circumstances, we are not disposed to place the plaintiffs under this obligation at this late date. However, the plaintiffs must bear the costs in accordance with the usual practice.

A decree will be signed in accordance with this opinion.